O’Neall, Jo
delivered the opinion of the Court.
I regret that, notwithstanding the three trials which this case has received, and although it has already had much more of the time and attention both of the Circuit Court, and of this Court, than its merits intitle it to, it should yet be necessary to send it back for a fourth trial. Before I proceed to noliee the grounds, upon which we think it necessary to comment, it is my duty to place the opinions delivered in this case, by two distinguished members of this Court, upon such grounds as will hereafter prevent them from being regarded as conflicting with one another.
As the case was presented to the Court of Appeals in the first instance, the only question considered was, whether the plaintiffs had the legal estate. Upon this, Judge Nott with his usual correctness decided, that Mrs. Jones was the trustee of the plaintiffs, and that she could not divest herself of that legal estate by any act of her own, without the consent of her cestuy que trusts ; and that, some of them beina: minors, they could not consent to the surrender, and therefore the legal estate was still in her. He, however, expressly declared, that if the case had been left to the jury, on the possession, alone, of the plaintiffs, he would not say, that the verdict might not be sustained. On the second trial the case was submitted to the jury on the possession of the plaintiffs; and it is in reference to this new position assumed by the case, that Judge Colcock’s opinion must be considered as applying. It was then considered as the case of cestuy que *470 trusts, not intitled, in law,' to the possession, but having the ac-* , . _ . . , , 7 • tual possession. In such a ease there could be no doubt, that m an action for an injury done to the possession, sounding altogether in damages, the jury might give damages to the extent of their equitable interests. And this was what was meant to be expressed in the instruction of the presiding Judge to the jury, on the second trial, and what Judge Colcock intended to convey, in saying, that the plaintiffs were intitled to recover their shares of the slaves.
’ '
It has been reserved to this Protean case to assume, on the' third trial, apiew’,’character of right. On all the former trials it was contendedj that Mrs. Jones’ interest was at an end, and, in the first instance, that the present plaintiffs were the legal owners, in the second instance, that being the equitable owners in possession, they were intitled to recover, as the bailees of Mrs. Jones the executrix. And the jury having found the fact to be so, there is no doubt, that, on that ground, the plaintiffs’ recovery might be sustained. For it cannot now be questioned, that the bailee of goods may maintain trover, or trespass, against every one but the legal owner : and a bailee, having had actual possession, eo.upled with an interest, might maintain trespass even against the owner, for taking the goods out of his possession. It is however due to my knowledge of the case to say, that I do not consider the trespass complained of as a high handed act, calling for vindictive damages. The case, from the commencement, was a dispute about the right of property. Hall, who was a creditor of Mrs. Jones, conceiving erroneously, but, I have no doubt honestly, that she had such an estate in the slaves, as made them liable to his debt, seized and sold them under his execution, and became the purchaser. Having lost the possession accidentally, he employed the present defendants to capture the slaves and deliver them to him ; and they did so, under circumstances which made them trespassers. To defeat Hall’s only chance of legal claim, Mrs. Jones consented to a marriage, which, in law, divested her of all claim to the support, bequeathed her by the will, from the income of the plantation and slaves, during widowhood ; but which, to say the least of it, was any thing else than assuming the matrimonial obligations, which are intended to unite two persons, through good and evil fortune,' during life.
*471 Having premised these observations, I will proceed, in as brief a manner as possible, to state, and examine, the several questions, which I think it necessary to consider, for the disposition of the present appeal. They are as follows: — 1st. Were the declarations of Mrs. Jones admissible 1 2nd. Was Abel Gibson a competent witness 2 3rd. Had the defendants’ counsel the right to impeach the credit of the witness Harris by a: cross-examination 2 4th. What damages are the plaintiffs in this case intitled to recover 1
1st. The plaintiffs now seek a recovery on the ground, that they are the bailees of Mrs. Jones the executrix; and they are suing in her right, and for her benefit. She could not therefore be sworn as a witness. Her declarations, if she herself is incompetent, must be still more so. This rule must however be taken with some qualifications. If her declarations constituted a part of the bailment, at the time it was made, they would be admissible as part of the res gestes. Or, if her declarations constituted the act of bailment itself, then they are a fact, arid part of the plaintiffs’ title, and may be given in evidence. 1 Stark. Ev. 47, 49. But, with these qualifications, the rule, that her declarations are inadmissible, must govern. If, on the trial, the evidence of her declarations had been confined to such as were made at the time, when she delivered the* possession of the slaves to the plaintiffs; then under the qualification of the rule, which I have already stated, it would have been competent. But her declarations, made after the alleged bailment, that she haddelivered the slaves to the plaintiffs, and more especially, such declarations after the seizure of the slaves under Hall’s execution, were incompetent, and ought not to have been received.
2nd. The question as to the competency of Gibson has been, in some degree, a vexed question in this case. It lies however, within a very narrow compass; and is, I think, susceptible of an easy solution. In 2 Stark. Ev. 4th part, 744, it is said, in speaking of the interest, which will render a witness incompetent, “ The interest to disqualify must be some legal, certain, and immediate iulerest, however minute, in the result of the cause, or in the record, as an instrument of evidence, acquired without fraud.” It appears, that Gibson bought the slaves now in dispute from Hall, and contracted, in writingjthatif he, Hall,should fail in recovering the slaves in this suit, then the amount agreed *472 to be paid by him, Gibson, should not bo paid ; otherwise that it should. This, it appears to me, constitutes a legal, certain, and immediate, interest in the witness, to defeat Hall’s recovery. It is obvious from the facts developed in the case,- that Hall has no title to the slaves, and that, of course, the purchaser from him has none ; but yet, according to the words of this contract, if Hall could, in any way, succeed in defeating the plaintiffs, he might recover on the note of Gibson for the purchase money, and thus leave him to set up any defence,- which he could, to the claim to be made by the legal representatives of Henry Jones deceased. It is, however, useless to push'the reasoning to an extent which would be at war with the opinion intimated by the Court on the last appeal, that this witness might be competent, as his interest appeared to be equally balanced. It is enough to say, that upon the contract being shewn, it is manifest, that the witness is to gain or lose money upon the event of this cause : and the burthen rests on him, therefore, to shew, that his-interest is equally balanced, and that he is indifferent. This-has not been, and, I apprehend, cannot be shewn. For, if I understand the case, Hall bought and sold nothing more than Mrs. Jones estate for her life, or widowhood : and if she ever had any such estate, it was ended by her marriage with Barker. The witness, therefore, in this point of view, acquired nothing' by his purchase from Hall; and hence he is deeply interested-to sustain an action, which enables him to avoid the payment of a note for $1150.
But there is another point of view, in which the witness is* clearly incompetent, and I choose to put the decision upon that' ground. He is interested in the record. He has,Ay his contract, made himself quasi a party; and the verdict here, if against the defendant, will be evidence to discharge him from the payment of his note to Hall. In 2 Stark. Ev. 4th part, 747, the rule is stated with great clearness. “ A witness is also interested, if the record would be the instrument of securing to him some advantage, or of repelling some charge against him, or claim* upon him, in a future proceeding.” In the application of this-rule, it would be always the safest course, never to make the inquiry, whether the witness, who had, by his contract, made the* verdict in the cause evidence for, or against him, could be indifferent between the parties. There are cases, where,-by operation- *473 ©f íaw, without any contract of the witness to that effect, the record would be evidence for,or against him : and,in such a case, if it appeared, that, legally, the witness could not gain, or lose by the event of the suit: or that, in any event of the case, his interest between the parties would be equal; then he would be competent. But even in such a case, and much more so in a case like the present, to remove the legal objection to the competency of the witness, this equality of interest in the record must be a legal result from the relation, which the witness bears to the parties, and not the result of the opinion of the witness, whether he might,or might not, gain, or lose, by the event of the suit. We must be enabled to say, from his relative situation, that it is impossible he can have any interest. In the case now under consideration, this conclusion cannot be arrived at, either in law, or in fact; and the witness ought to have been excluded.
3rd. I notice the third ground, more for the sake of stating a rule in relation to it, than from any bearing it has on the result of this case. For the presiding Judge, in the exercise of a sound, and legal discretion, might, and no doubt did, restrict a cross-examination, which was assuming,,a wide and unprofitable range of interrogation. The rule is, that a witness cannot, on his cross-examination, be asked irrelevant questions, with a view of calling other witnesses to contradict his answers ; but he may be asked irrelevant questions, with a view of obtaining from him inconsistent, and contradictory answers, and of thus impeaching, and even destroying, his credit.
4th. This is, perhaps, the most important inquiry in the case. The action of trespass is, in most cases of the tortious taking of a chattel, a concurrent remedy with trover; and, generally, the rules in relation to damages in the latter are applicable to the former. In trover, or in trespass, the extent of the plaintiff’s right, and of the defendant’s conversion, must both be taken into consideration, in estimating the plaintiff’s damages. For example, if the plaintiff had only an estate for life, or for years, in the chattel, the jury may find damages proportioned to this less estate. If the plaintiff has regained possession of the chattel, he can only recover damages for the time it has been out of his possession, and for any injury it may have sustained. It is a mistaken notion to suppose, that in either trover, or trespass, a *474 recovery, of any sum, will vest the property in the defendant. There must be a recovery of what was supposed, and intended to he found, as the value of the chattel; and in trespass, there must be a satisfaction of the recovery, before the property is thereby vested in the defendant.
In 1 Stark. Ev. 199, 200, it is said, “ Where, however, the real merits of the present action have not been at all inquired into in a former proceeding, issue may be taken on the fact, the judgment being pleaded in bar.” “ Where issue is taken on the fact, whether the second action is brought for the same cause of action as the first, evidence is admissible of what passed on the trial.” In 3 Stark. Ev. 4th part, 1508, it is said, “A judgment in trover for a permanent conversion changes the property; but it seems to be competent to the plaintiff in that action, to shew that the damages were given merely for the temporary conversion, and not as the value of the chattel.” In the same book and page, note (z.) a reference is made to Gilbert’s Law of Evidence, 265, 2nd edition, and to Trials per Pais, 224, where it is said to be laid down, “that if a jury give but 3l. damages for a horse, whose real value is 15i., a new action lies for damages for the horse, where evidence may be given that the first action was only for the conversion, and not for the damages for the horse itself.” It is clear from these authorities, that even in trover, in order to constitute a bar to a second action for the value of the chattel, the verdict must have found a sum intended to cover the value of the chattel: and in trespass the force of this rule is enhanced, and its application is the more immediate, inasmuch as in this form of action, the injury done to the possession, and not the right of property, is the gravamen of the action!
Before a recovery in trover would vest the property in the defendant, I am very much inclined to think, that there ought to be a satisfaction. It is true, that most of the authorities speak of the judgment having this effect. In 1 Stark. Ev. 198, note (b.) the case of Smith v. Gibson, Rep. Temp. Hardw. 319, is cited, in which Lord Hardwieke is reported to have said, “there are several cases where a recovery in an action will be a bar to another action of the same nature ; but that is where the first recovery is a satisfaction for the very thing demanded by the second action. In an action of trover the plaintiff recovers *475 damages for the thing, and it is as a sale of the thing to the defendant, which vests the property in him, and therefore it is a bar to an action of trespass for the same thing.” If a recovery in trover operates as a sale, it is by implication of law ; and that implication can only arise, not from the recovery, but from the satisfaction of the value found. But, however, the rule may be in trover, where the right of property is the issue; yet in trespass, where that is not, by the form of action, pur in issue, but only constitutes a part of the damages, arising from the tortious taking, there must be a satisfaction of the recovery, before the property is to be considered as thereby sold to the defendant.
Iu order to ascertain the damages which the plaintiffs are intitk d to recover, let us examine; 1st, their right which has been injured : and 2nd, the conversón, or injury done to that right, by the defendants, or rather by William Hall, for whom they acted.
The plaintiffs claim as the bailees of Mrs. Jones ; and the fact of the bailment being found for them, they would, as the bailees of the legal owner, be intitled to damages for the value of the property : and their recovery, and satisfaction of it, would vest the property in the defendants, and bar any action which the executrix, Mrs. Jones, might bring. As, however, the case has to go hack on other grounds, it is well enough to remark, that 1 am not at all satisfied, that, upon the facts being properly understood by a jury, they would come to that conclusion. If the delivery was to Thomas Jones, for the executrix, or for his brothers and sisters, then he alone is the bailee, and Priscilla Jones is improperly a party. If the delivery was to him for the use of himself and his brothers and sisters, then a jury might very properly find that they were in possession, as cestui/ que tmsts intitled to the equitable estate, and, in that point of view, find the value of the shares of the two plaintiffs now on the record. If the plaintiff, Thomas Jones, was nothing more than the manager of the plantation and negroes for his mother, and she, as well as he, had the actual possession, then she, and Pot he, ought to have brought this action. These remarks are made, not with a view of prejudicing the case, or as indicating any settled opinion, but merely with a view of pointing out, what may be very suitable inquiries to be submitted to the jury *476 on the next trial; and thus increase the chances of ending this litigated case.
executrix, and therefore the representatives of her legal estate, what injury have they sustained by the tortious taking, or conversion, of the defendants % The rule may be stated generally, that-in trespass for a'tortious taking of a chattel, if the chattel is destroyed, or placed beyond the power of the plaintiff to recover ; or if the defendant has the actual possession ; or has sold it; then, in auy of these cases, the plaintiff would, as in trover, be intitled to recover either the value of the property, with interest from the time of the conversion, or the value of the property and its hire. To this general rule there may be some exceptions, and this case will constitute one. The defendants took the property, and in a short time after Gibson bought it, stipulating that if Hall failed to recover, he, Gibson, was not to pay for the slaves. Gibson then sold, and delivered the possession of Jupiter, one of the slaves, to Thomas Jones, one of the plaintiffs, upon the same terms. Now what injury have the plaintiffs sustained in relation to this slave ? Unquestionably, the only injury done to them is the loss of his services, during the time he was out of the possession of Thomas Jones, who had possession for his co-plaintiff. The plaintiffs have the slave himself, and will not be liable to pay, for him: and they cannot, therefore, be intitled to damages for his value. They have had his services, and, for the time they have had th'em, they cannot be intitled to hire. As to the other two slaves sold to Gibson, they have the right to elect, whether they will compel the defendants to respond in damages for their value, and hire; or to require damages for the tortious taking alone, and the time Hall had possession of the slaves, and resort to their remedy over against Gibson, for the value and hire of the slaves. This last course I should suppose preferable. By a recovery for the time they were out of their possession, the plaintiffs establish their right of property ; and Gibson is therefore discharged from any liability to Hall, and will be accountable to the plaintiffs for the property, and the hire. If the former course is pursued, and a recovery is had for the value and hire of the slaves, Hall’s legal representatives, or perhaps these defendants, may, in equity, compel Gibson to surrender the slave which he retained in possession, and as the bailees of Mrs. Jones, the *477 to account for his hire: and to account for the value and hire of the one which he permitted Macon to take away. My first suggestion will avoid a suit in Equity, and will, 1 should suppose, answer all the objects which the plaintiffs ought to desire, the recovery of the property, and compensation for the loss of the services of the slaves. But it is for them to elect which course they will pursue. The motion fora new trial is granted.
Johnson, J. and Harper, J. concurred.
Motion granted.